[No. 2717.]

John Conlee v. The State.

1. Slander—Information—Practice.—It being required that an information charging the slander of a female by imputing to her a want of chastity shall set out substantially the words constituting the alleged slander, it follows that such words must be substantially proved.

2. Same—Evidence—Variance.—The slanderous words as alleged in the indictment were that the defendant had had carnal intercourse with Miss F. B., and that the character of Miss F. B. was bad. The proof was that the appellant said to the witness that she, Miss F. B., "would have been a nice girl if he, defendant, had not done what he had done to her; and if he, the witness, did not believe it, to meet the defendant at the gin house that night, and he, defendant, would prove it." *Held*, that there is a fatal variance between the *allegata* and the *probata*.

Appeal from the County Court of Brazos. Tried below before the Hon. D. C. Barmore, County Judge.

The opinion states the nature of the case. The punishment assessed by a verdict of guilty was a fine of five hundred dollars.

Gus Pitts was the first witness introduced by the State. He testified that he had known the defendant for about ten or fifteen months. Witness was acquainted with Miss Florence Bullock, and was addressing her at the time of this alleged offense. On or about the eighteenth day of November, 1882, he saw the defendant, and had a conversation with him in front of Hall's drug store, in Bryan, Brazos county, Texas. In the course of that conversation, the defendant stated to the witness that "Florence Bullock would have been a nice girl if I had not done what I have done; and if you don't believe what I say and will meet me to-night at the gin house, I will prove it to you." Lew Smith was near at the time, but did not hear the conversation. Miss Bullock lived in the Steep Hollow neighborhood, and the defendant lived near there.

Miss Florence Bullock testified, for the State, that she was an unmarried female; that she knew the defendant, and had a conversation with him on or about the first of November, 1882. The defendant asked the witness if it would do him any good to visit the witness. The witness replied that it would not. There-

upon the defendant said that he would destroy the happiness of the witness and make Mr. Pitts quit writing to her. The witness replied that he could not do so without lying, and he answered that he would do it at all hazards; that he was capable of telling a thousand lies in a minute. The witness then told him that she had a father and brothers to rely upon for protection, and he replied that he did not fear the whole Bullock family.

Cross-examined, the witness stated that she became angry and indignant, whereupon the defendant said that he was joking, from which the witness inferred that he meant that he was joking about destroying her peace of mind, and about not being afraid of the Bullock family. The witness then permitted him to see her home, which she would not have done had she not believed his protestations that he was joking about the matter.

Miss Sallie Cook, who was next introduced by the State, testified that in the year 1882, prior to the eighteenth day of November, the defendant told her that he intended to have revenge out of the Bullock family. The witness understood this threat to have been uttered because the Bullocks objected to the defendant as a visitor to Miss Florence.

*Henderson & Henderson,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. An information charged the defendant as follows: That "one John Conlee did orally, falsely and maliciously impute to Miss Florence Bullock a want of chastity, in this, that the said John Conlee did then and there orally, falsely and maliciously say to one Gus Pitts, that he, the said John Conlee, had had carnal knowledge of her, the said Miss Florence Bullock, and that she, the said Miss Florence Bullock, was of bad character."

To support this charge the State proved by Gus Pitts the language used by defendant, which was as follows: "She would have been a nice girl if he (defendant) had not done what he had done to her; and if I (meaning witness) did not believe it, meet him at the gin house that night and he would prove it." The witness stated that the above language was the only statement made or words used by defendant to him about Miss Florence Bullock; that defendant did not state to him that he, de-

fendant, had had carnal knowledge of Miss Bullock. Defendant objected to this evidence because it was not in substance the slander charged in the information, and his objections being overruled he excepted, and insists that the conviction should be set aside because the evidence does not prove the charge as alleged in the information.

It has been held by this court that in a prosecution for this offense the information or indictment must set forth substantially the language, or whatever else, which constitutes the imputation of a want of chastity. (*Lagrone* v. *The State*, 12 Texas Ct. App., 426; *Melton* v. *The State*, Id., 552.) It being necessary, therefore, that the slanderous words should be *substantially* alleged, it follows that they must be *substantially* proved. This means that the essential, important, material portion of the slander as alleged must be proved. All the words alleged need not be proved, but enough of them must be proved as laid to constitute the offense. It will not do to allege one imputation and prove another. Proof must correspond with allegation. This is an elementary rule governing in criminal as well as in civil actions, and cannot with safety and justice be disregarded. It is unnecessary to cite authority in support of such ancient and universally recognized principles as these.

In the case before us we are compelled, reluctantly, to hold that the language of defendant as proved was not even substantially the language charged in the information. It was entirely different, containing none of the essential, important or material words alleged to have been uttered by the defendant. On the contrary, it was proved that the alleged words were not uttered by the defendant. However basely the defendant may have slandered the young lady, he did not slander her in the language set out in the information. We must reverse the judgment and remand the cause, for the reason that there is a fatal variance between the slander as alleged and the language proved. This will not necessarily defeat the ends of justice, because the alleged crime is not yet barred, and if guilty of this vile offense the defendant may yet be prosecuted and properly punished under another information alleging the slander substantially in accordance with the evidence.

*Reversed and remanded.*

Opinion delivered May 23, 1883.